IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION
7:15-CV-105-D

| | | |
|---|---|---|
| OTIS LEE CHERRY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **MEMORANDUM AND** |
| | ) | **RECOMMENDATION** |
| CAROLYN W. COLVIN, Acting | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

In this action, plaintiff Otis Lee Cherry ("plaintiff" or, in context, "claimant") challenges the final decision of defendant Acting Commissioner of Social Security Carolyn W. Colvin ("Commissioner") denying his application for supplemental security income ("SSI") on the grounds that he is not disabled. The case is before the court on the parties' respective motions for judgment on the pleadings. (D.E. 26, 31). The motions have been fully briefed. (*See* D.E. 27, 32). The motions were referred to the undersigned Magistrate Judge for a memorandum and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). (*See* 2 Feb. 2016 Text Order). For the reasons set forth below, it will be recommended that plaintiff's motion be allowed, the Commissioner's motion be denied, and this case be remanded.

I. BACKGROUND

A. Case History

Plaintiff filed an application for SSI on 6 January 2012. Transcript of Proceedings ("Tr.") 19. Although he alleged a disability onset date of 27 April 2008 (Tr. 19), SSI is payable no earlier than the month after that in which the application was filed (20 C.F.R. § 416.335). The application was denied initially and upon reconsideration, and a request for hearing was

timely filed. Tr. 19. On 5 June 2014, a video hearing was held before an administrative law judge ("ALJ"), at which plaintiff, plaintiff's sister, and a vocational expert testified. Tr. 33-62. In a written decision dated 15 July 2014, the ALJ found that plaintiff was not disabled and therefore not entitled to SSI. Tr. 19-28. Plaintiff timely requested review by the Appeals Council. Tr. 14-15. On 11 March 2015, the Appeals Council denied the request for review. (Tr. 1-6). At that time, the decision of the ALJ became the final decision of the Commissioner. 20 C.F.R. § 416.1481. Plaintiff commenced this proceeding for judicial review on 15 May 2015, pursuant to 42 U.S.C. § 1383(c)(3). (*See In Forma Pauperis* ("IFP") Mot. (D.E. 1); Order Allowing IFP Mot. (D.E. 4); Compl. (D.E. 6)).

      B.     **Standards for Disability**

The Social Security Act ("Act") defines disability as the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A); *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995). The Act defines a physical or mental impairment as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 1382c(a)(3)(D). "[A]n individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." *Id.* (a)(3)(B).

The disability regulations under the Act ("Regulations") provide the following five-step analysis that the ALJ must follow when determining whether a claimant is disabled:

> (i) At the first step, we consider your work activity, if any. If you are doing substantial gainful activity, we will find that you are not disabled. . . .
>
> (ii) At the second step, we consider the medical severity of your impairment(s). If you do not have a severe medically determinable physical or mental impairment that meets the duration requirement in § 416.909, or a combination of impairments that is severe and meets the duration requirement, we will find that you are not disabled. . . .
>
> (iii) At the third step, we also consider the medical severity of your impairment(s). If you have an impairment(s) that meets or equals one of our listings in [20 C.F.R. pt. 404, subpt. P, app. 1] ["Listings"] and meets the duration requirement, we will find that you are disabled. . . .
>
> (iv) At the fourth step, we consider our assessment of your residual functional capacity ["RFC"] and your past relevant work. If you can still do your past relevant work, we will find that you are not disabled. . . .
>
> (v) At the fifth and last step, we consider our assessment of your [RFC] and your age, education, and work experience to see if you can make an adjustment to other work. If you can make an adjustment to other work, we will find that you are not disabled. If you cannot make an adjustment to other work, we will find that you are disabled. . . . .

20 C.F.R. § 416.920(a)(4)(i)-(v).

The burden of proof and production rests with the claimant during the first four steps of the analysis. *Pass*, 65 F.3d at 1203. The burden shifts to the Commissioner at the fifth step to show that alternative work is available for the claimant in the national economy. *Id.*

In the case of multiple impairments, the Regulations require that the ALJ "consider the combined effect of all of [the claimant's] impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity." 20 C.F.R. § 416.923. If a medically severe combination of impairments is found, the combined impact of those impairments must be considered throughout the disability determination process. *Id.*

### C. ALJ's Findings

Plaintiff was 47 years old on the date he filed his application for SSI and 49 years old on the date of the administrative hearing. *See* Tr. 26 ¶ 6; *cf.* Tr. 40 (plaintiff's erroneous testimony at the hearing that he was then 48 years old). The ALJ found that he has at least a high school education. Tr. 27 ¶ 7. The ALJ further found that plaintiff has no past relevant work. Tr. 27 ¶ 8.

Applying the five-step analysis of 20 C.F.R. § 416.920(a)(4), the ALJ found at step one that plaintiff had not engaged in substantial gainful activity since the date his application was filed, 6 January 2012. Tr. 21 ¶ 1. At step two, the ALJ found that plaintiff had the following medically determinable impairments that were severe within the meaning of the Regulations: history of a cerebrovascular accident and substance abuse. Tr. 21 ¶ 2. At step three, the ALJ found that plaintiff's impairments did not meet or medically equal any of the Listings. Tr. 21 ¶ 3.

The ALJ next determined that plaintiff had the RFC to perform light work subject to various limitations. Tr. 23 ¶ 4; *see* 20 C.F.R. § 416.967(b).[1] She stated:

> the claimant has the residual functional capacity to perform light work (described as requiring lifting and carrying 20 pounds occasionally and 10 pounds frequently as well as an ability to stand, sit, and walk each for 6 hours in an 8-hour workday) except never climb ladders, ropes or scaffolds and occasionally climb ramps/stairs and balance. The claimant also must avoid exposure to hazards and is limited to simple, routine, repetitive tasks [("SRRTs")].

Tr. 23 ¶ 4.

The ALJ found at step four that plaintiff had no past relevant work. Tr. 26 ¶ 5. At step five, the ALJ accepted the testimony of the vocational expert and found that there were jobs in the national economy existing in significant numbers that plaintiff could perform, including jobs

---

[1] *See also Dictionary of Occupational Titles* (U.S. Dep't of Labor 4th ed. rev. 1991) ("DOT"), app. C § IV, def. of "L-Light Work," 1991 WL 688702. "Light work" and the other terms for exertional level as used in the Regulations have the same meaning as in the DOT. *See* 20 C.F.R. § 416.967.

in the occupations of hand packer/inspector, gasket inspector, and buckle inspector. Tr. 27 ¶ 9. The ALJ accordingly concluded that plaintiff was not disabled from the date his application was filed, 6 January 2012. Tr. 28 ¶ 10.

## D.     Standard of Review

Under 42 U.S.C. § 405(g) and 1383(c)(3), judicial review of the final decision of the Commissioner is limited to considering whether the Commissioner's decision is supported by substantial evidence in the record and whether the appropriate legal standards were applied. *See Richardson v. Perales*, 402 U.S. 389, 390, 401 (1971); *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). Unless the court finds that the Commissioner's decision is not supported by substantial evidence or that the wrong legal standard was applied, the Commissioner's decision must be upheld. *See Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986); *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972). Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Perales*, 402 U.S. at 401 (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). It is more than a scintilla of evidence, but somewhat less than a preponderance. *Perales*, 402 U.S. at 401.

The court may not substitute its judgment for that of the Commissioner as long as the decision is supported by substantial evidence. *Hunter v. Sullivan*, 993 F.2d 31, 34 (4th Cir. 1992) (per curiam). In addition, the court may not make findings of fact, revisit inconsistent evidence, or make determinations of credibility. *See Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996); *King v. Califano*, 599 F.2d 597, 599 (4th Cir. 1979). A Commissioner's decision based on substantial evidence must be affirmed, even if the reviewing court would have reached a different conclusion. *Blalock*, 483 F.2d at 775.

Before a court can determine whether a decision is supported by substantial evidence, it must ascertain whether the Commissioner has considered all relevant evidence and sufficiently explained the weight given to probative evidence. *See Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439-40 (4th Cir. 1997). "Judicial review of an administrative decision is impossible without an adequate explanation of that decision by the administrator." *DeLoatche v. Heckler*, 715 F.2d 148, 150 (4th Cir. 1983).

## II.   OVERVIEW OF PLAINTIFF'S CONTENTIONS

Plaintiff asserts that the ALJ's decision should be reversed and SSI benefits awarded or, alternatively, that the case should be remanded for a new hearing on the grounds that the ALJ erroneously excluded from her RFC determination restrictions addressing plaintiff's difficulties in concentration, persistence, or pace and failed to address the opinion of a nonexamining state agency consulting psychologist on plaintiff's RFC for social functioning.[2] Plaintiff also seeks remand pursuant to sentence six of 42 U.S.C. § 405(g) for consideration of purportedly new and material evidence, namely, a decision by the North Carolina Department of Health and Human Services on 31 December 2012 that plaintiff was entitled to Medicaid disability benefits (D.E. 28). Because the ALJ's handling of the issue of plaintiff's RFC for concentration, persistence, or pace is dispositive of this appeal, the court devotes its analysis to this issue.

## III.   ALJ'S HANDLING OF PLAINTIFF'S RFC FOR CONCENTRATION, PERSISTENCE, OR PACE

### A.   Applicable Legal Principles

In determining a claimant's RFC, Social Security Ruling 96-8p, 1996 WL 374184 (2 July 1996) requires the ALJ to perform a function-by-function analysis. The ruling states that the "RFC assessment must . . . assess [the individual's] work-related abilities on a function-by-

---

[2] The psychologist is Ben Williams, Ph.D., other opinions of whom are discussed below. *See generally* Tr. 77, 80-82.

function basis." *Id.* at *1 ¶ 4. However, in *Mascio v. Colvin*, 780 F.3d 632, 636 (4th Cir. 2015), the Fourth Circuit declined to adopt a per se rule requiring remand when the ALJ does not perform an explicit function-by-function analysis. But "'[r]emand may be appropriate . . . where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review.'" *Id.* (quoting *Cichocki v. Astrue*, 729 F.3d 172, 177 (2d Cir. 2013)). Reference by an ALJ to a proper function-by-function analysis by a state agency consultant may, but does not necessarily, satisfy the function-by-function analysis requirement. *See Herron v. Colvin*, No. 1:15-cv-2-MOC, 2015 WL 5725903, at *5-7 (W.D.N.C. 30 Sept. 2015).

"Concentration, persistence, or pace refers to the ability to sustain focused attention and concentration sufficiently long to permit the timely and appropriate completion of tasks commonly found in work settings." Listing 12.00C.3. It is one of four broad functional areas assessed using the special technique for mental impairments under the Regulations. *See* 20 C.F.R. § 416.920a. *Mascio* instructs that "an ALJ does not account 'for a claimant's limitations in concentration, persistence, and pace by restricting the hypothetical question to simple, routine tasks or unskilled work.'" *Mascio*, 780 F.3d at 638 (quoting *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1180 (11th Cir. 2011)). The court reasoned:

> [T]he ability to perform simple tasks differs from the ability to stay on task. Only the latter limitation would account for a claimant's limitation in concentration, persistence, or pace.

*Id.* The court recognized that a claimant's limitation in concentration, persistence, or pace may not translate into a limitation in the RFC, but held that the ALJ must explain if that is the case. *Id.* In the absence of such an explanation, remand is in order. *Id.*; *see also*, *e.g.*, *Herron*, 2015 WL 5725903, at *5-7.

### B. Analysis

Here, the ALJ found in applying the special technique for mental impairments as part of her step three analysis that plaintiff had moderate difficulties in concentration, persistence, or pace. Tr. 22 ¶ 3. As indicated, the only mental capacity-related restriction in the RFC was restriction of plaintiff to SRRTs, which absent a satisfactory explanation is insufficient under *Mascio* to account for plaintiff's difficulties in concentration, persistence, or pace. *See Mascio*, 780 F.3d at 638. The ALJ nowhere expressly explains how plaintiff's difficulties in concentration, persistence, or pace are reflected in the RFC. The ALJ's rationale for her determination on plaintiff's difficulties in concentration, persistence, or pace and the extent to which, if any, her RFC determination addresses those difficulties are indecipherable.

The ALJ stated that she based her finding that plaintiff has moderate difficulties in concentration, persistence, or pace on two grounds:

> The claimant reported some problems relative to this area of functioning and Mr. Miller indicated that the claimant had some [sic] demonstrated some problems with maintaining pace.

Tr. 22 ¶ 3.

With respect to the first ground, plaintiff testified, as the ALJ recited, "that others had told him that he had displayed problems with focusing and concentrating." Tr. 24 ¶ 4 (referencing Tr. 49-50). While the ALJ found plaintiff not fully credible in some respects, she did not identify this particular testimony by plaintiff or the corroborating testimony by his sister as not credible. Plaintiff also gave testimony bearing specifically on pace, namely, the inability to write quickly (Tr. 47-48), but the ALJ appears to have found this testimony not credible (*see* Tr. 24-25 ¶ 4).

As to the second ground, Jerry L. Miller, M.A., a consulting psychological examiner, conducted an evaluation of plaintiff on 6 August 2012. *See* Tr. 388-91. The only findings by Mr. Miller to which it appears the ALJ could be alluding (at times referred to herein as "the initial findings") read:

> He was able to follow simple instructions though worked slowly on repetitive tasks.
> . . . .
> [M]anual speed remained as a significant weakness for this gentleman. He has difficulty with persistence and speed on manual tasks.

Tr. 390. Assuming, as it appears, that the ALJ was relying on these findings, she was obviously giving them significant weight.

The ALJ herself throws into question the validity and basis of her determination on plaintiff's difficulties in concentration, persistence, or pace by another determination she makes. In developing her RFC determination, the ALJ expressly stated that she gave "no significant evidentiary weight" to a subsequent finding by Mr. Miller in his "Summary and Conclusions" relating to concentration, persistence, or pace. This finding by Mr. Miller (at times referred to herein as "the subsequent finding") reads: "He may have difficulty with following through with persistence and endurance requiring ongoing alertness in his processing of information and motor skills." Tr. 391. This finding clearly signifies that plaintiff has difficulties in concentration, persistence, or pace. The ALJ's essentially complete rejection of it on its face undercuts her determination that plaintiff has moderate difficulties in concentration, persistence, or pace and the two grounds the ALJ cited in support of that determination.

Moreover, the ALJ details significant evidence supporting her rejection of Mr. Miller's subsequent finding. The ALJ stated:

> As for the opinion evidence, Mr. Miller indicated in an August 2012 consultative psychological evaluation that the claimant might have difficulty with following

> through with persistence and endurance requiring ongoing alertness in his processing of information and motor skills. (Exhibit 5F) The undersigned considered Mr. Miller's opinion, but allowed it no significant evidentiary weight as it is not fully supported by the other medical evidence of record. For example, records from the rehab center describe the claimant as having no focal neurological abnormalities or sensory loss. (Exhibit 7F, page 40) In addition, the claimant had intact motor strength in all extremities. (Exhibit 7F, page 46) In April 2012, the claimant's mental status was listed as intact. (Exhibit 7F, page 143) Moreover, nerve conduction study and concentric needle electromyography performed in January 2014 were described as normal with no evidence of peripheral neuropathy or radiculopathy. (Exhibit 10F, pages 8-9)

Tr. 25 ¶ 4. By detailing this evidence, the ALJ adds evidentiary weight to her rejection of Mr. Miller's subsequent finding.

The ALJ nowhere reconciles the conflict between her determination that plaintiff has moderate difficulties in concentration, persistence, or pace and the supporting findings, and her rejection of Mr. Miller's subsequent finding, which is tantamount to a determination that plaintiff has no such difficulties. The unresolved conflict leaves in doubt the ALJ's actual determination with respect to plaintiff's concentration, persistence, and pace; the basis for the determination; and the extent to which, if at all, any limitations in these functions are accounted for in plaintiff's RFC.

The Commissioner argues that by characterizing the initial findings by Mr. Miller as indicating that plaintiff had "some problems with maintaining pace" the ALJ's determination that plaintiff had moderate difficulties in concentration, persistence, or pace was limited solely to pace. (*See* Comm'r's Mem. 8-9). The restriction to SRRTs was sufficient to address this difficulty, the Commissioner contends, because it purportedly does not entail staying on task, which was the concern in *Mascio*. *See Mascio*, 780 F.3d at 638. The Commissioner cites no legal authority in support of this argument. Notably, the argument appears to concede that there are no restrictions in the RFC responsive to plaintiff's concentration and persistence.

Even if the Commissioner's interpretation of *Mascio* and underlying assumption on the severability of pace from concentration and persistence were deemed sound, she has not convincingly shown that the ALJ limited her determination on plaintiff's concentration, persistence, or pace solely to pace. There are numerous indications that she did not. The Commissioner's conjecture that she did limit her determination as alleged serves ultimately to highlight the ambiguity of that determination and the extent to which, if any, it is accounted for in the RFC.

Among the indications that the ALJ did not limit her determination to pace alone is the fact that she did not expressly state that it was so limited, as she obviously could have done. The finding at issue that she did make spoke of plaintiff's problems with "maintaining" pace. Maintenance of pace implicates persistence and arguably concentration. In addition, there is the ALJ's rejection of the subsequent finding by Mr. Miller, which ostensibly encompasses limitations in pace.

Further, the other ground that the ALJ gave for her determination that plaintiff has moderate difficulties in concentration, persistence, or pace—plaintiff's reports of problems "relative to this area of functioning"—was not limited to pace. This "area" of functioning, by definition, encompasses concentration, persistence, and pace. And, as discussed, plaintiff's reports went well beyond simply pace.

Also relevant is the ALJ's reliance on the 24 August 2012 mental RFC assessment by consulting nonexamining state agency psychologist Ben Williams, Ph.D. (Tr. 80-82) included in the reconsideration determination. The ALJ stated:

> An August 2012 reconsideration determination described the claimant as able to able to [sic] follow three-step instructions, make simple work-related decisions, and carry out very short and simple instructions. (Exhibit 3A) The undersigned allowed the opinion expressed in the reconsideration determination and allowed it

significant evidentiary weight in concluding the claimant limited to simple, routine, repetitive tasks.

Tr. 26 ¶ 4. Notably, Dr. Williams did not specify the restrictions he imposed on the basis of limitations in pace alone. The restriction that plaintiff can follow simple three-simple instructions was based on plaintiff's limitations in understanding and memory. *See* Tr. 81. The restriction that plaintiff can make simple work-related decisions and carry out very short and simple instructions were based on limitations Dr. Williams found in plaintiff's concentration and persistence. *See* Tr. 81. These limitations, which Dr. Williams deemed moderate, were in the ability to carry out detailed instructions and the "ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods." Tr. 81.

Other findings by the ALJ tend to contradict the bases upon which Dr. Williams grounded the restrictions the ALJ embraced. With respect to the restriction to simple three-step instructions, she expressly rejected the testimony of plaintiff and his sister that plaintiff had significant problems with diminished reasoning/memory. Tr. 25 ¶ 4. With respect to the two other restrictions, as discussed, the ALJ rejected Mr. Miller's subsequent finding which expressly includes "persistence" and encompasses concentration as well. Admittedly, the ALJ did not state expressly that she was adopting the reasons given by Dr. Williams for the various restrictions perhaps, as this discussion suggests, because she was not.

The ALJ explains at one point that she "also took into account the claimant's full-scale I.Q. score of 73 . . . in concluding him limited to simple, routine, repetitive tasks." Tr. 26 ¶ 4. In summarizing her RFC analysis, she makes it sound as if this was the only basis for the SRRT restriction:

> In summary, the claimant's combination of impairments could reasonably be expected to limit the claimant to light work activity with the aforementioned postural and environmental restrictions. Moreover, the claimant's full-scale I.Q. score of 73 could rationally be anticipated to restrict the claimant to simple, routine, repetitive tasks. However, in light of the evidence suggesting the claimant may have been overstating his symptoms, the undersigned cannot find the claimant's allegation that he is incapable of all work activity to be credible.

Tr. 26 ¶ 4. This characterization by the ALJ of the role plaintiff's I.Q. played in the SRRT restriction serves to enhance the ambiguity over the basis for that restriction and the extent to which, if any, the RFC addresses the moderate difficulties in concentration, persistence, or pace the ALJ found plaintiff to have.

For the foregoing reasons, the ALJ failed to adequately explain the basis for her determination that plaintiff has moderate difficulties in concentration, persistence, or pace and the extent to which, if any, her RFC determination accounts for those difficulties. These deficiencies preclude the court from determining whether the ALJ's decision is supported by substantial evidence. This case should accordingly be remanded for further proceedings.

## IV. CONCLUSION

For the foregoing reasons, IT IS RECOMMENDED that plaintiff's motion (D.E. 26) for judgment on the pleadings be ALLOWED, the Commissioner's motion (D.E. 31) for judgment on the pleadings be DENIED, and this case be REMANDED to the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this Memorandum and Recommendation.

In making this ruling, the court expresses no opinion on the weight that should be accorded any piece of evidence. That is a matter for the Commissioner to decide.

IT IS DIRECTED that a copy of this Memorandum and Recommendation be served on each of the parties or, if represented, their counsel. Each party shall have until 4 May 2016 to

13
Case 7:15-cv-00105-D   Document 34   Filed 04/20/16   Page 13 of 14

file written objections to the Memorandum and Recommendation. The presiding district judge must conduct his own review (that is, make a de novo determination) of those portions of the Memorandum and Recommendation to which objection is properly made and may accept, reject, or modify the determinations in the Memorandum and Recommendation; receive further evidence; or return the matter to the magistrate judge with instructions. *See, e.g.*, 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3); Local Civ. R. 1.1 (permitting modification of deadlines specified in local rules), 72.4(b), E.D.N.C.

**If a party does not file written objections to the Memorandum and Recommendation by the foregoing deadline, the party will be giving up the right to review of the Memorandum and Recommendation by the presiding district judge as described above, and the presiding district judge may enter an order or judgment based on the Memorandum and Recommendation without such review. In addition, the party's failure to file written objections by the foregoing deadline will bar the party from appealing to the Court of Appeals from an order or judgment of the presiding district judge based on the Memorandum and Recommendation.** *See Wright v. Collins*, **766 F.2d 841, 846-47 (4th Cir. 1985).**

Any response to objections shall be filed within 14 days after the filing of the objections.

This 20th day of April 2016.

_____
James E. Gates
United States Magistrate Judge